SUSAN A. CARTER *vs.* CITY OF AUGUSTA.

Kennebec.    Opinion March 31, 1892.

*Pauper. Removal. Overseers. Instructions. R. S., c. 24, § 43.*

In an action under R. S., c. 24, § 43, to recover pauper supplies furnished, after notice, to a child of tender years, the defendant contended that the overseers of the poor offered to remove the child to the almshouse, and that the plaintiff having refused to allow it to be done, could not thereafterwards charge the defendant with its support. *Held*: whether the plaintiff voluntarily assumed the support of the child, on offer of defendant to remove it from her custody, was a question for the jury.

*Held, also,* that the removal or offer of removal must be the act of the board, and not the individual, personal act of one member alone, unauthorized by the board.

When further instructions to the jury, or more explicit language, are desired to convey the proper meaning of the reply of the court to a question by a juryman, at the close of the charge, they should be requested at the time.

ON MOTION AND EXCEPTIONS.

This was an action of assumpsit, in which the plaintiff sought to recover for supplies furnished by her, a resident of Augusta, to a child of two or three years of age, after notice to the overseers of the poor.

It was not denied by the defendant at the trial of the case before a jury in the Superior Court, for Kennebec County, that the child was supported by the plaintiff, nor that the proper statute notice to the overseers was given. The defendant, however, contended that the notice was not given in good faith; and that, shortly after the notice given, one of the overseers offered to take the child to the almshouse, but was prevented from doing so by the plaintiff; and that he notified the plaintiff that the defendant city would not be liable, and would not pay the plaintiff for supplies which might thereafter be furnished by her to the child.

At the close of the presiding justice's charge and before the jury had retired for deliberation, one of the jurors requested further instruction from the court, to wit:

" Whether, after the liability of the town for support and maintenance of the pauper is established, the action of one of the board, or three or five be sufficient to terminate that liability."

In reply to which the presiding justice instructed the jury as follows:

"I don't think that the action of one would be sufficient to terminate the liability after the liability had attached. If you shall find in this case that the termination of the obligation of the city depended upon the action of one of the overseers of the poor alone, I don't think that that would be sufficient."

The presiding justice had previously given the jury general instructions, to which no exceptions were taken, that: "If, for any portion of the time covered by this bill, you shall find that the child was not a pauper, for so much of the time the plaintiff cannot recover. If you shall find that at any time during the period covered by this account the child was a pauper, and that the plaintiff refused to deliver it to the overseers of the poor on proper demand, to be provided for by them, then she cannot recover for the support and care after such demand and refusal until another notice and request to the overseers of the poor." . . . "On the other hand, the defendant's witnesses, testified that she refused to give up the child, December 12, 1887, and Mr. Hoyt testified that the whole board of overseers met the plaintiff on the street in the spring of 1888, when she said, as Mr. Hoyt states, that she would not give up the child, and they testify that at each of these interviews she was positively informed that the city would not be responsible for taking care of the child if kept by her." . . . "An offer merely of the overseers of the poor to send a team for the child would not relieve the city from liability unless notified by the plaintiff, and are you satisfied from the evidence, that she was not willing to surrender it, having the ability to care properly for it herself?" A verdict being returned for the plaintiff, the defendant took exceptions to the instruction given by the court in answer to the inquiry made by one of the jury.

*E. W. Whitehouse, C. L. Tanner* with him, for plaintiff.

Exceptions: Defendant not aggrieved. *Reed* v. *Canal Corp.* 65 Maine, 53; *Merrill* v. *Merrill*, 67 *Id.* 79.

*A. M. Goddard*, for defendant.

Motion : The statute on which this action is founded has always received a strict construction. *Gross* v. *Jay*, 37 Maine, 9. Town under this statute is liable only for necessaries furnished by an inhabitant to a person in distress and standing in immediate need. *Knight* v. *Fort Fairfield*, 70 Maine, 500 ; *Lamson* v. *Newburyport*, 14 Allen, 30. In order for the plaintiff to maintain her action she must show that the expenses were "necessarily incurred" in the relief of a pauper. None of the expenses incurred by the plaintiff subsequent to the offer of removal by the father and mother of the child and the like offer by the overseers of the poor could be considered necessary. *Ib.*

A town which provides a suitable almshouse for the support of its poor is not liable to an inhabitant for the support of a pauper who is physically able to transport himself to such almshouse. *Ib.*

Exceptions : The presiding justice practically instructed the jury that the offer of the overseer on the 12th day of December, 1887, and his subsequent offers in behalf of the city to take the pauper child to the city almshouse were of no effect in law ; were a mere nullity and could not relieve the defendant city from liability to the plaintiff for supplies subsequently furnished to this pauper child, because the offer was made by a single member of the board. The jury were given to understand that this offer to be availing in defense must have been made by more than one member, though the presiding justice did not go so far as to prescribe the number necessary to make such an offer binding. Where a city has provided a suitable almshouse for its poor and maintains it for that purpose, as in this case, upon notice from an inhabitant, it is sufficient for one member of the board of overseers of the poor to offer himself to remove a pauper to such almshouse, and it does not require the joint action of the board nor even the concurrence of a majority of such board.

HASKELL, J. Assumpsit for pauper supplies. It is admitted that the pauper, a child of tender years, fell into distress and that the defendant became liable thereafter to the plaintiff for its support. But it is contended, in defense, that the overseers

of the poor, of defendant city, offered to remove the child to the
city almshouse, and the plaintiff, having refused to allow it to
be done, could not thereafterwards charge the defendant with
its support.

Whether the plaintiff voluntarily assumed the support of the
child, on offer of the defendant to remove it from her custody,
was a question of fact for the jury. The testimony was conflict-
ing, and the jury found the issue for the plaintiff. It is not
clear that the weight of evidence fails to support the verdict.
But it is contended that the judge misdirected the jury upon
that issue. At the close of the charge, a juror asked the court,
in substance, whether a single member of the board of over-
seers could terminate the liability of the city to the plaintiff, by
offering to remove the child from her care to the city almshouse.
The court replied, "I don't think that the action of one would
be sufficient to terminate the liability after the liability had
attached. If you shall find in this case that the termination of
the obligation of the city depended upon the action of one of
the overseers of the poor alone, I don't think that that would be
sufficient."

Taken in connection with the charge, the fair meaning of the
court's answer is, that the removal or offer to remove the child must
be the act of the board and not the individual, personal act of
one member alone, unauthorized by the board. If more explicit
language had been desired to convey the proper meaning, it
should have been requested at the time. The offer of a stranger
to remove the child from the plaintiff's further care might not,
in all cases, remove its necessities as a pauper. Very much
would depend upon the circumstances and conditions of each
case.

Overseers of the poor are required to determine and direct
their action as a body. The action of one overseer is the action
of the board when authorized by them; and, in many cases,
when consistent with implied authority, although no express
authority had been given, becomes the action of the board, when
approved or ratified. *Linneus* v. *Sidney*, 70 Maine, 114 ;
*Smithfield* v. *Waterville*, 64 Maine, 412.

The child was five years of age. The doctrine of *Lamson* v. *Newburyport*, 14 Allen, 30, relied upon by defendant does not apply. There, the supposed pauper was an adult, and lived in the plaintiff's tenement, and might at any time have been ejected therefrom, and was not incapable of going to the alms-house. So in *Knight* v. *Fairfield*, 70 Maine, 500, another case cited by the defendant, it was held the duty of the agent of the town to remove a boy ten years old from the plaintiff's house, where he was in distress, if he would relieve the town from his support, the time of year being winter, and the agent's house five and one half miles away. A mere direction by the agent to the plaintiff to send the boy to his house was held insufficient, although more a question of fact than of law.

The child, for whose support this action is brought, was of tender years and a pauper at the plaintiff's house. The defend-ant might have removed it. Whether the mere offer so to do, if made by the defendant, met by the alleged refusal of the plaintiff to surrender the child, relieved the defendant from its further support, need not be considered here, inasmuch as the controversy is, not what effect legally results from the act done, but whose act it was. The ruling treats particularly of the authority of the actor, not of the effect of the act. The verdict assumes that the act done was not the act of the city, but that, if it had been, it would have worked its release from further liability to support the child. The ruling is, that the unauthor-ized and unratified act, of one overseer, cannot operate as the act of the board, so that the city shall reap the benefit of it. Until the board attempted the removal of the child, it could not be known what course the plaintiff might have chosen to pursue.

If it be said that the refusal of the plaintiff to part with the child was evidence showing the want of distress, the answer is that was a question of fact, and must have been settled by the jury in her favor; so the ruling excepted to, as matter of law, was well enough, inasmuch as it did not take from the jury the question of the further necessity of the child's support as a pauper. It merely held that want of authority, in one overseer of the poor, to act for defendant, failed to give his attempted interference

with the pauper the same legal force and effect it would have had, if he had been authorized by the board, so that his act would be their act. They had the right to remove the child to the almshouse; he had not.

*Motion and exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.